UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-30078-GAO

JESSICA COLON,
Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
September 19, 2012

O'TOOLE, D.J.

The plaintiff appeals the denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The plaintiff applied for DIB and SSI on October 15, 2008, alleging disability beginning October 1, 2008. (Administrative Tr. at 9, 130 [hereinafter R.].)[1] The plaintiff's application was denied on November 24, 2008, (id. at 80), and denied upon reconsideration on June 15, 2009, (id. at 86, 89). An Administrative Law Judge ("ALJ") held a hearing on June 10, 2010, (id. at 26-75), and determined that the plaintiff was not disabled, (id. at 6). The Disability Review Board ("DRB") affirmed the ALJ's decision on January 27, 2011, with an amendment. (Id. at 1.) The plaintiff has exhausted her administrative remedies, so her claims for DIB and SSI are now ripe for review by this Court under 42 U.S.C. § 405(g).

---

[1] The administrative record has been filed electronically (dkt. no. 8). In its original paper form, its pages are numbered in the lower right-hand corner. Citations to the record are to the pages as originally numbered, rather than to the numbering supplied by the electronic docket.

I.     **Background**

On the date of her application for benefits, the plaintiff was thirty years old. (Id. at 130.) She is a high school graduate with work experience as a dietary aide. (Id. at 60, 153.) The consultative examination report on the plaintiff for the Massachusetts Rehabilitation Commission's Disability Determination Services ("DDS") states that she stopped working on October 16, 2008. (Id. at 398.) The plaintiff's attorney asserted that the plaintiff suffered from Sjögren's syndrome, Fibromyalgia, and mental health issues associated with her physical problems. (Id. at 32.)

A.     Medical History

The following is a summary of the plaintiff's relevant medical history:

On September 3, 2008, the plaintiff visited Dr. Teresa Klich-Nowak, a rheumatologist, complaining of bilateral pain and swelling in her hands and feet that made her unable to sleep at night or remain at work for more than five hours. (Id. at 220.) Dr. Klich-Nowak's physical examination showed that the plaintiff had a good range of motion in her shoulders, elbows, and wrists, that her grip strength was relatively well-preserved, and that her hips and knees moved relatively well throughout the range of motion. (Id. at 220-21.) Dr. Klich-Nowak suggested the plaintiff's pain and swelling might be due to neuropathy that is sometimes associated with Sjögren's syndrome, with which the plaintiff had previously been diagnosed. (Id. at 221.) Dr. Klich-Nowak ordered a nerve conduction study, increased the plaintiff's dose of Tramadol to help with pain, and prescribed Trazodone to help with sleep. (Id.) Dr. Klich-Nowak instructed the patient to use ice packs at the end of exercise sessions and suggested that the plaintiff work very hard on reducing her weight. (Id.)

On September 10, 2008, Dr. Mohammad Ali Hazratji performed nerve conduction tests and found that the plaintiff had normal motor and sensory nerve conduction velocities in the upper and lower extremities bilaterally. (Id. at 226.)

On March 23, 2009, the plaintiff visited Dr. Hazratji again, complaining of pain in her wrists and shoulders, a feeling of swelling in the legs, numbness in her feet, low back pain, dizziness, and headaches. (Id. at 522.) All neurological tests were normal. (Id. at 522-23.) Dr. Hazratji assessed the plaintiff as having "chronic headache, probably muscle tension type headaches," fibromyalgia, a history of Sjögren's syndrome, nonspecific dizziness and low back pain. (Id. at 523.)

From April 9, 2009 to October 6, 2009, the plaintiff received outpatient psychiatric treatment from Becky Valentine at City Clinic. (Id. at 636-58.) During that time, Valentine treated the plaintiff for "mood disorder due to general medical condition" and anxiety disorder. (Id. at 650.)

On April 14, 2009, the plaintiff visited Dr. Sanford Bloomberg, a psychiatrist. (Id. at 398.) Dr. Bloomberg gave the plaintiff a mental status examination, which indicated depression and anxiety. (Id. at 399.) Dr. Bloomberg found that the plaintiff was oriented for time, place, and person, could do multiplication "all right," knew her Social Security number, and could do simple arithmetic problems. (Id.) However, based on the plaintiff's statements, Dr. Bloomberg found that the plaintiff could not handle money. (Id.) Dr. Bloomberg diagnosed the plaintiff as having: i) depressive disorder not otherwise specified ("depression NOS"), ii) mild schizoaffective disorder, iii) generalized anxiety disorder, iv) panic disorder with agoraphobia, v) opioid dependence (because of the medication she was taking for her physical symptoms). (Id. at 400.) With regard to the depression, Dr. Bloomberg noted "she does seem significantly

3

depressed, but does not have all the symptoms of a significant depression, and only for six months." (Id.)

      B.      Functional Capacity Evaluations

On November 20, 2008, Dr. Elaine Hom completed a Physical Residual Functional Capacity Assessment ("RFC") for the plaintiff. (Id. at 348-55.) Dr. Hom concluded that the plaintiff could: i) occasionally lift twenty pounds, ii) frequently lift ten pounds, iii) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, iv) sit (with normal breaks) for a total of about six hours in an eight-hour workday, v) perform unlimited pushing and/or pulling (including operation of hand and/or foot controls), vi) occasionally climb, balance, stoop, kneel, crouch, and crawl, and vii) work without any manipulative, visual, communicative, or environmental limitations. (Id. at 349-52.)

On March 26, 2009, Dr. Shankar Narayan conducted a second Physical RFC. (Id. at 390.) Dr. Narayan's RFC agreed with Dr. Hom's with the following exceptions: i) the plaintiff could stand and walk for at least two hours in an eight-hour workday, ii) the plaintiff should avoid concentrated exposure to hazards such as machinery or heights, and iii) the plaintiff should avoid exposure to extreme cold. (Id. at 394.)

On June 13, 2009, Dr. Joseph Litchman completed a psychiatric review technique assessing the plaintiff's mental state between October 16, 2008 and February 1, 2010. (Id. at 401.) Dr. Litchman found that the plaintiff had depression NOS and a panic disorder, both of which were severe but could not be expected to last twelve months. (Id.) Dr. Litchman made this finding based on the fact that the plaintiff's medical records showed the plaintiff only suffered for two months from severe depression NOS and severe panic disorder. (Id. at 413.) Dr. Litchman disagreed with Dr. Bloomberg's diagnosis of a schizoaffective disorder. (Id.) Dr.

Litchman also found that the plaintiff's mental afflictions only imposed a mild degree of limitation on her activities of daily living, social functioning, and "concentration, persistence or pace" and caused no episodes of decompensation for an extended duration. (Id. at 411.)

On September 10, 2009, Dr. Klich-Nowak completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical). (Id. at 490.) Dr. Klich-Nowak found that the plaintiff could frequently lift and/or carry ten pounds, occasionally lift and/or carry twenty pounds, stand and/or walk at least two hours in an eight-hour workday, must periodically alternate between sitting and standing, and had limited pushing and pulling in upper and lower extremities. (Id. at 490-92.) Dr. Klich-Nowak based these findings on the fact that the plaintiff complained of pain and/or tenderness and sometimes had swelling in the joints during range-of-motion evaluations. (Id. at 492.) Dr. Klich-Nowak further found that the plaintiff could occasionally climb, balance, kneel, crouch, crawl, and stoop based on the fact that the plaintiff claimed she often became tired and had difficulty completing any activity lasting longer than two hours. (Id.) Dr. Klich-Nowak found that the plaintiff could perform unlimited reaching and frequent handling, fingering, and feeling. (Id. at 493.)

On June 20, 2010, Becky Valentine from City Clinic completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental). (Id. at 660.) Valentine found that the plaintiff's mental impairments had a slight to moderate effect on her ability to do the following: i) understand and remember short, simple instructions, ii) carry out short, simple instructions, iii) understand and remember detailed instructions, iv) carry out detailed instructions, and v) make judgments on simple work-related decisions. (Id. at 661.) Valentine also found that the plaintiff's struggles with her physical problems had caused moderate to mild depressive symptoms, decreased memory, and decreased concentration. (Id.)

As part of the June 10, 2010, ALJ hearing, the ALJ took testimony from Larry Takki, a vocational expert ("VE"). (<u>Id.</u> at 57.)[2] Takki testified that, given the ALJ's hypothetical description of the plaintiff's abilities, the plaintiff would be unable to do her previous work as a dietary aide. (<u>Id.</u> at 60.) However, Takki testified that, given the same hypothetical abilities, the plaintiff would be able to do the following unskilled, light exertion jobs: i) inserter, ii) small product assembly, and iii) electronics worker. (<u>Id.</u> at 60-61.) Takki also testified that these jobs could all be performed sitting or standing and did not require any walking. (<u>Id.</u> at 65.) Takki was asked by the plaintiff's attorney and the ALJ whether an individual classified as sedentary could perform the light duty jobs Takki had testified the plaintiff could do. (<u>Id.</u> at 66.) Takki answered that, based on his experience, between sixty and seventy-five percent of the light duty jobs he mentioned would not require a worker to lift more than ten pounds or to exclusively sit or stand and thus could be performed by a person with a sedentary exertional level. (<u>Id.</u> at 67.)

After the hearing, the ALJ found that the plaintiff was not disabled within the meaning of the Social Security Act. (<u>Id.</u> at 9.) The ALJ found that, though the plaintiff had the severe impairments of Sjögren's syndrome and fibromyalgia, these impairments did not meet or medically equal the impairments required by the Social Security Administration to justify benefits. (<u>Id.</u> at 11.) The ALJ found that the plaintiff had the RFC to: i) lift and carry ten pounds frequently and twenty pounds occasionally, ii) sit about four hours and stand/walk about six hours in an eight-hour work day, iii) walk with a cane, iv) occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but not climb ladders, ropes, or scaffolds, v) perform only jobs during which she can sit or stand, vi) perform only jobs that avoid concentrated exposure to extreme cold temperatures and dangerous machinery, vii) perform simple and detailed

---

[2] The hearing transcript misspells Mr. Takki's name as Tauckey.

instructions, but not complicated or complex instructions, viii) perform jobs with unlimited interaction with coworkers and supervisors but only limited interaction with the public, ix) sustain concentration, persistence, and pace for two-hour periods, and x) adapt to routine, simple changes in work environment. (<u>Id.</u> at 11-12.)

On January 27, 2011, the DRB affirmed the ALJ's findings but amended the plaintiff's RFC, finding that she could only stand or walk for two hours in an eight-hour work day. (<u>Id.</u>) Because Takki found that the jobs he suggested could be done at a sedentary exertion level, the DRB found that its RFC modification did not warrant a reversal of the ALJ's decision. (<u>Id.</u>)

**II.     Standard of Review**

The findings of the Commissioner of Social Security as to any fact are considered conclusive if they are "supported by substantial evidence." 42 U.S.C. § 405. This Court must uphold the findings of the Commissioner "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991). It is the Commissioner's duty, not the Court's, to resolve conflicts in evidence and determine the question of disability. (<u>Id.</u>)

**III.    Discussion**

    <u>A.     Dr. Hazratji's Findings</u>

The plaintiff argues that, because Dr. Hazratji diagnosed the plaintiff with chronic headaches, the ALJ should not have found that the plaintiff could sustain concentration, persistence, and pace for two-hour periods. When assessing the effect of an impairment, the question is not whether the impairment exists at all but whether it is disabling, that is, whether it is sufficiently severe to prevent the plaintiff from working. <u>See</u> 42 U.S.C. § 423(d)(2)(A); <u>Church v. Astrue</u>, No. 10-30236-FDS, 2012 WL 369424, at *8 n.6 (D. Mass. Feb. 2, 2012)

(finding diagnosis of a psychological disorder insufficient to establish disability without a showing of related functional loss).

The ALJ's finding that the plaintiff could sustain concentration, persistence, and pace for two-hour periods was supported by substantial evidence. Though Dr. Hazratji did identify the plaintiff's headaches as a problem, he did not find them to be disabling, writing that the plaintiff's "recent and remote memory, attention span and concentration" were all normal. (R. at 522.)

      B.      <u>Dr. Bloomberg's Findings</u>

The plaintiff argues that the ALJ improperly and inconsistently evaluated the opinion of Dr. Bloomberg. When deciding how to weigh medical opinions, the court should consider, among other things, whether the opinion is supported by relevant evidence, especially medical signs and laboratory findings. 20 C.F.R. § 404.1527(c).

Here, the ALJ assigned little weight to Dr. Bloomberg's opinion because many of his findings were based on the plaintiff's claims, not on medical signs or laboratory findings. For instance, despite his finding that the plaintiff could do arithmetic and multiplication, Dr. Bloomberg accepted the patient's word that she could not handle money. Dr. Bloomberg also diagnosed the plaintiff with mild schizoaffective disorder based on her claim of hearing voices despite the fact that, as Dr. Litchman put it, "there really is no support for any schizoaffective symptoms." (R. at 413.) It is plain that the ALJ carefully considered Dr. Bloomberg's report. In evaluating his assignment of a relatively low global assessment of functioning (GAF) score, she said: "I give some weight to this opinion because the examiner documented his mental status exam findings. However, I do not give greater weight because it does not appear that he

attempted to corroborate the claimant's assertions with objective test modalities." (<u>Id.</u> at 15.) Such judgments are primarily the responsibility of the ALJ.

C.    Dr. Litchman's Findings

The plaintiff argues that the ALJ should not have placed great weight on Dr. Litchman's opinion because he found, allegedly without providing a rationale, that the plaintiff's mental impairments would improve by February 2010. However, as the defendant points out, the plaintiff misunderstands Dr. Litchman's opinion. Dr. Litchman did not opine that the plaintiff would definitely improve within twelve months but rather that the plaintiff failed to provide sufficient evidence that her mental impairments would last beyond twelve months.

The ALJ did not err in crediting this opinion. One of the factors to consider when evaluating whether a mental impairment is severe enough to prevent a claimant from working is whether the impairment has lasted or is expected to last for at least twelve continuous months. 20 C.F.R. § 404 app. 1 §12.00. Dr. Litchman states in his report that, because the plaintiff's medical records only show severe mental impairments for two months, there is "no longitudinal support for [a projected twelve-month] duration." (R. at 413.) It cannot be said that the ALJ committed reversible error by finding insufficient evidence that the plaintiff's mental impairment would last for at least twelve continuous months.

D.    Dr. Klich-Novak's Findings

The plaintiff argues that the ALJ should not have interpreted Dr. Klich-Nowak's recommendation that the plaintiff continue therapy and reduce her body weight as an assertion that she believed that the plaintiff was capable of doing so. Logically, however, it is not unreasonable for the ALJ to conclude that if a doctor recommends a course of treatment for a patient, the doctor believes the patient is capable of following that recommendation.

The plaintiff further argues that the ALJ should have discussed Dr. Klich-Nowak's other findings, which she argues show that the plaintiff would be unable to follow the doctor's recommendations. However, just because the ALJ did not directly discuss all of Dr. Klich-Nowak's findings does not mean she did not consider them as part of the entirety of the evidence. See N.L.R.B. v. Beverly Enters.-Mass., 174 F.3d 13, 26 (1st Cir. 1999). The ALJ need not have addressed every piece of evidence because her findings as a whole show that she implicitly resolved conflicts in the evidence before her. Id.

The plaintiff also argues that the ALJ should have adopted Dr. Klich-Nowak's statement that the plaintiff could sit or stand for at least two hours instead of finding that the plaintiff could sit for four hours and stand for six hours. The point is now moot. The DRB modified the ALJ's decision to find the plaintiff could only stand or walk for two hours. Given the modification, the DRB still concurred with the ALJ's ultimate conclusion that the plaintiff did not qualify for benefits.

E.      The Plaintiff's Credibility

The plaintiff argues that the ALJ unfairly attacked the plaintiff's credibility and mischaracterized her statements. When an ALJ assesses a claimant's credibility, she may consider how the claimant's testimony fits in with the rest of the evidence, especially when the ALJ's opinion is supported by specific findings. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

The ALJ's finding that the plaintiff was not entirely credible was supported by substantial evidence, as it was based on specific findings of inconsistency. The ALJ specifically referred to the plaintiff's statements that she stays in bed nearly eight hours per day and needs help to get to the bathroom every morning. The ALJ found that the plaintiff's credibility had been "eroded"

because these statements did not fit with the rest of the evidence. Specific examples of conflicting evidence are the plaintiff's testimony that she attends church alone three to four times per week and the assessment by the plaintiff's physician, Dr. Klich-Nowak, that she could lift ten pounds frequently and twenty pounds occasionally.

      F.      Takki's Testimony

Finally, the plaintiff argues that the ALJ should have found that the VE's testimony was inconsistent with the information in the Dictionary of Occupational Titles ("DOT") and therefore could not be used to determine the plaintiff's work capability. If an ALJ wishes to rely on a VE's testimony, the ALJ must resolve any conflict between the VE's testimony and the information in the DOT. SSR 00-4p, 2000 WL 1898704, at *1. VEs may be able to provide more specific information about jobs than the DOT, which lists the maximum requirements of jobs as they are generally performed rather than the range of requirements for each job. Id. at *3. Information about the requirements of a particular job can come from a VE's experience in job placement. (Id. at *2, 4.)

    Based on his experience in job placement, Takki resolved the conflict between his testimony and the DOT by providing more specific information about the requirements of individual jobs than was listed in the DOT. The DOT lists the jobs of inserter, small product assembly, and electronics worker as light exertion jobs. However, Takki explained: "Those are categorized as light duty probably because of the standing requirements for a lot of those jobs. But . . . there are many [of those] jobs that you can perform sitting or standing." (R. at 67.) Takki testified that he provided this specific job information based on "[twenty-one] years of watching people do this stuff." (Id. at 69.)

**IV.**     **Conclusion**

For the foregoing reasons, there was no error warranting reversal. The plaintiff's Motion (dkt. no. 12) for Order Reversing Decision of Commissioner is DENIED. The defendant's Motion (dkt. no. 14) for Order Affirming Decision of Commissioner is GRANTED. The Commissioner's decision is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge